**Lindsay Deanne DAVIS, Plaintiff,**

v.

**REGIONAL ACCEPTANCE CORP., et al., Defendant.**

**No. Civ.A. 302CV442.**

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 4, 2002.

---

Christopher C. North, Leonard Anthony Bennett, Leonard A. Bennett, P.C., Newport News, VA, for Plaintiff.

Alan Durrum Wingfield, Tameka Meshaun Collier, Troutman Sanders LLP, Richmond, VA, Kimberly Ann Taylor, Thompson & McMullan, Richmond, VA, Christopher Lawrence Perkins, LeClair Ryan, Richmond, VA, Alan Durrum Wingfield, Douglas Alan Scott, Amy Jacqueline Inge, DurretteBradshaw PLC, Richmond, VA, for Defendants.

## ORDER

PAYNE, District Judge.

By Orders entered herein on July 26, 2002 and August 16, 2002, Peninsula Imports and Hampton Roads Financing's Motion To Dismiss and Mercury Finance's Motion to Dismiss were referred to Magistrate Judge Dennis W. Dohnal for report and recommendation. Having reviewed the Report and Recommendation of the Magistrate Judge entered herein on September 5, 2002, and there being no timely filed objections thereto, and having considered the record and the Report and Recommendation and finding no error therein, it is hereby ORDERED that the Report and Recommendation of the Magistrate Judge is ADOPTED on the basis of the reasoning of the Report and Recommendation.

It is further ORDERED that:

(1) Peninsula Imports and Hampton Roads Financing's Motion to Dismiss as to the alleged violation of the Fair Credit Reporting Act under 15 U.S.C. § 1681b is granted; and

(2) Mercury Finance Company of Virginia's Motion to Dismiss is denied in its entirety;

(3) the plaintiff's motion to withdraw and/or dismiss the allegations of paragraph 49(d) of the Complaint as against Hampton Roads Finance Company is granted;

(4) all remaining grounds for requested dismissal, including Hampton Road Finance Company's motion to dismiss and motion to decline supplemental jurisdiction is denied.

The issues are adequately addressed by the briefs and oral argument would not materially aid the decisional process.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.

## *REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE*

DOHNAL, United States Magistrate Judge.

This matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on motions to dismiss by defendants Peninsula Imports, Inc. (doing business as Hall Acura of Newport News)(Hall), Hampton Roads Finance Company (HRFC), and Mercury Finance Company of Virginia (Mercury). Having considered all the pleadings and oral argument, the Court recommends that Hall's motion to dismiss should be GRANTED in part and DENIED in part; that HRFC's motion to dismiss the claim that it violated the Fair Credit Reporting Act (FCRA) be GRANTED; and that Mercury's motion to dismiss the allegation that it violated the Equal Credit Opportunity Act (ECOA) be DENIED.

### Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is properly granted when, accept-

ing as true all non-conclusory factual allegations in the complaint and drawing all reasonable inferences in favor of the non-moving party, the plaintiff can prove no set of facts upon which relief may be granted. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Johnson v. Mueller,* 415 F.2d 354 (4th Cir.1969). At the same time, competing versions of the facts are the very basis for lawsuits and are therefore an insufficient basis for resolution on a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *See Trulock v. Freeh,* 275 F.3d 391, 405 (4th Cir.2001).

## Facts

This case arises from a the sale of a used car. The Complaint alleges the following series of events. Plaintiff, Lindsay Davis, went to Hall on November 20, 2001, in response to an advertisement that Hall would finance and sell a car to anyone regardless of their credit history. Compl. ¶ 11. Plaintiff was told by Hall that she would receive financing if she bought one of two particular cars. Compl. ¶ 11. Hall offered, and Plaintiff accepted, an offer of credit for a 1998 Nissan Sentra. Compl. ¶¶ 11–12, 14. Plaintiff signed the retail installment sales contract Hall presented to her and Hall delivered a certificate of ownership as well as possession of the Sentra to Plaintiff that same day. Compl. ¶¶ 11–12, 15. Hall thereupon recorded the title in Plaintiff's name at the Virginia Division of Motor Vehicles. Compl. ¶ 15.

On or about the following day, November 21, 2001, Hall contacted several finance companies, including Mercury, in an attempt to sell the note. Compl. ¶ 18. Mercury obtained a copy of the Plaintiff's consumer credit report, but it did not offer to buy the note or extend any credit to Plaintiff Compl. ¶ 18. It is further alleged that Mercury did not communicate, or it insufficiently communicated, its actions to the Plaintiff. Compl. ¶¶ 18, 28. Approximately one month following the sale, Hall contacted the Plaintiff to inform her that it intended to deny the loan with a cancellation of the transaction and that the vehicle should be returned. Compl. ¶ 20. Plaintiff refused to agree to the cancellation of the contract or to return the car. Compl. ¶ 21. Plaintiff made some payments that Hall accepted and cashed. Compl. ¶ 22. Plaintiff also tendered other payments that Hall refused to accept or cash. Compl. ¶ 22. Further allegations in the Complaint include that on or about January 30, 2002, HRFC independently obtained Plaintiff's consumer credit report, but did not offer to purchase the note or extend credit to the Plaintiff (Compl.¶ 22) and that HRFC did not communicate, or it insufficiently communicated, its actions to the Plaintiff Compl. ¶¶ 22, 28. On May 2, 2002, Hall obtained Plaintiff's consumer credit report for a second time, but it did not communicate, or it insufficiently communicated, its actions to the Plaintiff. Compl. ¶¶ 26, 28. The Complaint finally alleges in essential part that Hall unlawfully repossessed the Sentra on the following day, May 3, 2002. Compl. ¶ 27.

## Analysis

The claims against Hall include allegations that it violated the Truth–in–Lending Act (TILA), the FCRA, and the ECOA.[1] The Complaint also includes four pendent state claims against Hall.[2] The federal counts against HRFC and Mercury include allegations that both violated the ECOA

---

1. The Equal Credit Opportunity Act (ECOA) is codified at 15 U.S.C. §§ 1691—1691f(2000). The Fair Credit Reporting Act (FCRA) is codified at 15 U.S.C. §§ 1681—1681n(2000). The Truth in Lending Act (TILA) is codified generally at 15 U.S.C. §§ 1601, et seq. (2000).

2. The pendent claims allege violation of the Virginia Consumer Protection Act (VCPA), breach of contract, conversion, and violation of the Uniform Commercial Code (UCC).

and FCRA. However, HRFC challenges only that part of the Complaint that alleges violations of the FCRA while Mercury only challenges the allegations that it violated ECOA.

## I. Claims against Hall

### A. TILA Counts

In Count III of the Complaint, Plaintiff alleges that Hall violated TILA by failing to accurately state the legal obligations between the parties at the time of disclosure and that it inaccurately stated the amount financed, the finance charge, and the annual percentage rate (APR) (through an attempt to charge interest on the full cost of the automobile rather than on the value of its possession during the period between November 20, 2001, and the date Defendant conveyed title) and by failing to properly label the required disclosures as estimates. Compl. ¶¶ 47—51.

 Because a motion to dismiss is an attack on the pleadings, the Court must find as a matter of law that the facts as alleged by Plaintiff do not state a cause of action in order to recommend granting affirmative relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. In order to state a violation of TILA's provisions under 15 U.S.C. § 1638 and Regulation Z at 20 C.F.R. § 226, the Plaintiff must allege that the creditor failed to accurately state any one of the required disclosures such as the amount financed, the total number of payments, the finance charges, the annual percentage rate, the identity of the creditor, and an itemization of the amount financed. A creditor must make the disclosures clearly and conspicuously in writing, in a form the consumer may keep, and it must do so before the credit is actually extended. 12 C.F.R. § 226.17(a)(1), (b). A credit contract is consummated when a consumer signs a credit contract that binds him to the credit terms. *Compton v. Altavista Motors, Inc.,* 121 F.Supp.2d 932, 936

(W.D.Va.2000). Regulation Z requires that these disclosures must properly "reflect the terms of the legal obligations of the parties" and where the creditor is uncertain of the terms, the creditor is required to clearly state that the disclosure is an estimate and the estimate must be based on the best information reasonably available at that time. 12 C.F.R. § 226.17(c)(1)-(2). Plaintiff has argued that if the contract was, in fact, subject to a condition precedent, then it was not binding on the parties on November 20, 2001, and thus no enforceable contract could be formed until Hall sold the credit contract to a third party. (Pl.'s Mem. at 8–9). Therefore, if there was no enforceable contract formed on November 20, 2001, then all the disclosures made were inaccurate and should have been labeled as estimates under Regulation Z.

Hall has argued for the purpose of this motion that the Plaintiff cannot rise above the allegations set forth in the Complaint and Hall claims that the only allegations are that Hall approved and extended credit to Plaintiff and transferred ownership of the Sentra to her on November 20, 2001. (Compl.¶¶ 14–15, 20–21). In fact, the Plaintiff has alleged facts that she acted in a way that was consistent with the transaction being consummated on November 20, 2001. (Compl.¶¶ 21–22, 27). However, Plaintiff also alleges facts that could be construed to conclude that Hall's actions were consistent with a party that believed it had retained ownership of the vehicle and that failure to assign the note as a condition prevented the sale from being completed. (Compl.¶¶ 20–22, 27). Whether and when the transaction was consummated is further complicated by the fact that Plaintiff alleges that Hall actually titled the vehicle in Plaintiff's name with the Virginia Department of Motor Vehicles. Compl. ¶ 15. The facts as alleged by Plaintiff give rise to at least one alternate

legal theory that could sustain a TILA cause of action *if* the contract was not consummated on November 20, 2001, in which case the finance charge information provided constituted estimates that should have been so identified.

The Court is mindful of the recent decision in *Tripp v. Charlie Falk Auto* in which this Court (J. Spencer) granted summary judgment to the defendant because it found no violation of TILA when the Plaintiffs were provided what the Court found to be accurate disclosures on the credit contract that they had the opportunity to read before signing. 2001 WL 1105132, *6, 2001 U.S. Dist. Lexis 14096, at *18 (E.D.Va. Aug. 22, 2001). The Court interpreted the transaction in *Tripp* to be a conditional contract, consummated on the date signed by the consumers, that bound the consumers as of the date of signing, but which was voidable at the option of the seller if third-party financing could not be obtained. 2001 WL 1105132, **6–7, 2001 U.S. Dist. Lexis 14096, at *18–19. Although the Court did not specifically hold that the *Tripp* sales contract was a contract subject to a "condition subsequent," its ruling reflects the holding that the contract was subject to a condition and, when that condition was not met, it allowed the contract to be voided. *Id.*

 It is not at all unusual and it is permissible for a Plaintiff to allege one set of facts that gives rise to two legal theories. On the one hand, the facts as alleged by Plaintiff in the Complaint are consistent with many of the facts in *Tripp*. However, to find that there is no TILA claim in this case, the Court would be required to accept some of the alleged facts as true and ignore others, which it cannot do, to go outside the pleadings, and then interpret the contract as a matter of law under the standards for summary judgment. Fed. R.Civ.P. 12(b); 56. This Court cannot recommend dismissal when it cannot recommend that the Plaintiff can prove no set of facts that would entitle her to relief. *See Trulock*, 275 F.3d at 405 (holding that a court should not dismiss a claim unless it is beyond all doubt that a Plaintiff can prove no set of facts that would entitle her to relief). Whether Plaintiff's claim ultimately survives summary judgment remains to be seen, but dismissal is not appropriate at this juncture under Fed. R.Civ.P. 12(b)(6). *Id.* Therefore, it is recommended that Hall's motion to dismiss the remaining TILA claims be denied.[3]

## B. FCRA Counts

 The ECOA and the FCRA are similar in that they both require notice to be given to consumers when a request is made by a creditor to a credit reporting agency to provide a consumer report and "adverse" action is then taken by the creditor. 15 U.S.C. §§ 1681a(k); 1691(d). However, the two statutes differ in purpose, coverage and remedy. The ECOA was enacted to address discrimination in any aspect of any credit transaction. 15 U.S.C. § 1691(a). It therefore covers the actions by all the potential creditors in this case, including Hall. 15 U.S.C. § 1691a(e)(for purposes of the statute, " 'creditor' means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."). The FCRA is more circumscribed in that it was enacted to ensure that consumer reporting agen-

---

**3.** Pursuant to Fed.R.Civ.P. 41, Plaintiff and Hall have agreed to dismiss the allegations contained in subsection (d) of paragraph 49 of the Complaint alleging that Hall violated TILA by failing to make required disclosures prior to obtaining Plaintiff's signature and extending credit.

cies—not all creditors—exercise care and "adopt reasonable procedures for meeting the needs of commerce for consumer credit ... and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance [with the Act]." 15 U.S.C. §§ 1681(a)-(b).

Hall urged in oral argument that the FCRA is inapplicable to it because it is not a consumer reporting agency. This Court finds the argument to be persuasive, but only as to certain claims. Under the "Definitions; rules of construction" section of the statute, it appears that the FCRA does not cover acts by any of the defendants in this case unless they are consumer reporting agencies as defined by the Act. 15 U.S.C. § 1681a(f).[4] However, the language employed in the Act as a whole belies such a conclusion as it would apply to all provisions of the Act. For instance, § 1681b(b)(2) prohibits any *person* from obtaining a consumer report for employment purposes without fulfilling enumerated requirements. Similarly, § 1681b(b)(3) requires that any *person* who intends to take an adverse action based on the consumer's credit report must provide a copy of the report and a written description of the consumer's rights under the Act. Section 1681m sets forth the requirements on *users* of consumer reports such as those "taking adverse actions on the basis of information contained in consumer reports." The remedies sections of the FCRA also includes civil penalties against any person who is negligent or willful in failing to comply with any requirement imposed under the Act. 15 U.S.C. §§ 1681n, 1681o. Section 1681q even au-

thorizes a criminal penalty that includes a fine and imprisonment of "any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." Accordingly, at this stage, the allegations appear to support some of the claims under several provisions of the FCRA while the claim under § 1681b does not.

 Specifically, in Count II, Plaintiff alleges that Hall failed to comply with the FCRA's adverse action notice requirements and that it impermissibly accessed the Plaintiff's credit report on May 2, 2002. 15 U.S.C. §§ 1681b, 1681m, 1681n, 1681q. In order to state a claim under § 1681b(a), the Plaintiff must allege facts that demonstrate that Hall was a credit reporting agency that furnished a consumer report for a reason other than those authorized by the statute. The Plaintiff has alleged that Hall is a Virginia corporation doing business as a retail automobile dealer and was a creditor as defined by TILA and the ECOA. However, there is no allegation that Hall is a consumer reporting agency subject to the provisions in § 1681b of the FCRA. Therefore, the claim that Hall violated § 1681b as set forth in Count II should be dismissed.

 At the same time, the Plaintiff has met her burden of pleading violations of the remaining sections of the FCRA in her Complaint by alleging that Hall had already extended credit to Plaintiff, that Hall had delivered ownership and transferred title, and that it was a binding financing agreement but that Hall interfered with Plaintiff's ability to make her required payments. If these facts are con-

---

4. A credit reporting agency is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

strued as true, as they must be at this stage, Hall had no permissible purpose in obtaining Plaintiff's credit report on May 2, 2002 or repossessing the vehicle. In order to state a claim under § 1681m, Plaintiff must allege that Hall took adverse action based on information contained in the consumer report and failed to provide "oral, written, or electronic notice of the adverse action to the consumer" that included a statement with the name and vital information about the consumer reporting agency and also information about the consumer's rights under the Act. Plaintiff has alleged that Hall obtained the Plaintiff's consumer report and either denied or terminated her credit—both adverse actions—and failed to give her any notice, let alone adequate notice under this section. Therefore, it is recommended that Hall's motion to dismiss as to the violation of § 1681m be denied.

 In order to state a claim for imposition of liability under §§ 1681n and 1681q, Plaintiff must allege that Hall acted willfully and obtained the information under false pretenses. Because Plaintiff alleges that Hall unlawfully repossessed a vehicle that was lawfully titled in her name after having unlawfully obtained her credit report, and then denied or terminated her credit and repossessed the Sentra, she has adequately alleged willfulness and false pretenses under the designated sections of the Act. Therefore, it is recommended that Hall's motion to dismiss be denied as to those claims made pursuant to §§ 1681n and 1681q.

## C. ECOA Counts

In Count I, Plaintiff alleges that Hall violated the ECOA because it either failed to provide Plaintiff with any notice stating the reasons why it denied or terminated her credit or because it supplied an insufficient notice in violation of 15 U.S.C. § 1691(d)(2)(b). In order to state a violation of subsection (d) of § 1691 of the ECOA, the Plaintiff must allege facts that demonstrate Hall denied or terminated her credit, but failed to give her the proper written notice of an adverse action.

 Plaintiff adequately alleges facts that Defendant Hall denied or terminated Plaintiff's credit even if she did not specifically use the words "deny credit" and "terminate credit." See Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985, 988 (4th Cir.), cert. denied, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990)(holding that "it is well settled that courts may excuse pleading defects if the facts alleged in the complaint and the relief requested demonstrate the existence of a substantial federal question."). Specifically, Plaintiff alleges that Hall extended credit and entered into a financing agreement with Plaintiff so that she could purchase the Sentra. Compl. ¶¶ 11–15. The Complaint further alleges that about a month after the sale and subsequent to transferring the title, Hall notified Plaintiff that it was rescinding the contract. Compl. ¶ 20. It is further alleged that the Plaintiff refused to undo the contract or return the Sentra and that she continued to make or attempted to make payments. Compl. ¶¶ 20–22. Although Hall accepted and cashed some payments, it is alleged in the Complaint that it also refused to accept or cash other payments. Compl. ¶ 22. Plaintiff further alleges that on May 2, 2002, Hall impermissibly obtained Plaintiff's credit report. Compl. ¶ 26. Finally, it is alleged that on the next day, on May 3, 2002, Hall unlawfully repossessed the Sentra. Compl. ¶ 27.

 Because Plaintiff is permitted to plead alternative theories and need only make a short plain statement apprising the Defendant of the allegations against it, Plaintiff has fulfilled all the pleading requirements of stating a federal claim un-

der the ECOA—that Hall took an adverse action and failed to notify her under subsection (d). *See Comet Enterprise Ltd. v. Air–A–Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997)(holding that unless it is beyond reasonable doubt that the Plaintiff can prove no set of facts upon which relief may be granted, then it is error to dismiss the claim); *Trulock*, 275 F.3d at 405. Denial or termination of credit is an adverse action. Titling the car in Plaintiff's name, refusing to accept payments, attempting to undo the contract, obtaining a subsequent credit report, and then repossessing the vehicle could all be construed as facts sufficiently alleging denial or termination of credit constituting an adverse action that would entitle a consumer to notice under the ECOA. Plaintiff need not have fashioned her complaint to do more than put Hall on notice of her claim under the ECOA. If it is determined that Hall was entitled to take such actions as may be established on summary judgment or at trial, a different result would be required. *Trulock*, 275 F.3d at 405. However, dismissal is improper at this juncture. Therefore, it is recommended that Hall's motion to dismiss the ECOA claim against it be denied.

## II. Claim against HRFC

■ Plaintiff alleges that HRFC is a Virginia corporation doing business as a financial institution and that it was a creditor as defined by the ECOA. Compl. ¶ 7. In Count II, however, Plaintiff alleges that HRFC failed to comply with the FCRA's adverse action notice requirements and that it impermissibly accessed the Plaintiff's credit report on May 2, 2002. 15 U.S.C. §§ 1681b, 1681m, 1681n, 1681q. HRFC argues that "obtaining a credit report for the purposes of determining whether to extend credit or not is a permissible purpose" under 15 U.S.C. § 1681b(a)(3)(A) and, therefore, Plaintiff's claim that HRFC accessed her report for an impermissible purpose should be dismissed. (Hall & HRFC's Mem. at 4). As discussed above, the portion of the FCRA that primarily addresses whether a credit report is accessed for a permissible purpose applies only to consumer reporting agencies.[5] There is no allegation that HRFC is a consumer reporting agency. Therefore, it is recommended that HRFC's motion to dismiss be granted.

## III. Claim against Mercury

■ Plaintiff has alleged that Mercury is a Virginia corporation doing business as a financial institution and was a creditor as defined by the ECOA. Compl. ¶ 9. In Count I, Plaintiff alleges that Mercury violated the ECOA under 15 U.S.C. § 1691(d)(2)(b) by independently obtaining her consumer report on November 21, 2001, and failing to provide any notice, or by supplying an insufficient notice, to Plaintiff regarding Mercury's participation in the decision that led to the adverse action of denying Plaintiff's credit application. Compl. ¶¶ 18, 30. In order to state a violation of subsection (d) of § 1691 as against Mercury, the Plaintiff need only allege facts that demonstrate that Mercury denied or terminated her credit and failed to give Plaintiff the proper written notice of an adverse action.

Defendant has moved to dismiss based on its theory that "[a]s a matter of law, Plaintiff was not entitled to any such notice" because Mercury's action is subject to an exception in the regulations that provide "[w]hen an application is made on behalf of an applicant to more than one

---

**5.** The Court's recommendation does not assume that HRFC obtained the report for a permissible purpose; the only determination is that this specific provision in the statute does not apply to creditors.

creditor and the applicant expressly accepts or uses credit offered by one of the creditors, notification of action taken by any of the other creditors is not required." (Mercury Finance Co. of Va.'s Mem. Supp. Mot. Dismiss at 2)(Mercury's Mem.)(citing 12 C.F.R. § 202.9(g), incorporated by 15 U.S.C. § 1691a(g)). As already discussed in this report, Plaintiff has pled one set of facts that gives rise to two legal theories. One theory relies on an interpretation of the attendant facts to mean that Hall extended credit to Plaintiff on November 20, 2001. The other is that Hall did not extend an offer of credit to Plaintiff on November 20, 2001, but that Hall merely attempted, as a third party, to obtain financing on behalf of the buyer when it contacted various defendants, including Mercury. Regardless of the interpretation of the contract, the Plaintiff has alleged facts that, if true, state a claim against Mercury that are not subject to the exception described in § 202.9(g). For purposes of considering the exception, the facts as alleged can be interpreted and applied to establish that on November 21, 2001, Hall wore the hat of a third party shopping around for a finance company to extend credit to the Plaintiff and that Mercury was one of those finance companies. It is therefore irrelevant under such a set of facts, if established, that Hall may have previously extended credit—even if it was the day before Hall queried Mercury and the other defendants—because it is uncontested that Plaintiff did not accept or use any credit offered by any creditor contacted by Hall on behalf of Plaintiff as required on the face of the regulation.[6] Therefore, Mercury's reliance on § 202.9(g) is not a basis for dismissal under Fed.R.Civ.P. 12(b)(6).

Furthermore, ECOA provides that the definition of creditor includes a corporation like Mercury when it is "an assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). Plaintiff alleges that Hall solicited Mercury to see whether it would purchase the note or extend credit to Plaintiff—for purposes of the ECOA the transactions are coterminous—and therefore Mercury is a creditor as defined by the statute for purposes of this case. Construing the allegations in the Complaint as true, the Plaintiff has stated a cause of action under the ECOA against Mercury and it is therefore recommended that Mercury's motion to dismiss the ECOA claim be denied.

## IV. Supplemental Jurisdiction

In Counts IV, V, VI and VII, Plaintiff alleges state law claims against Hall for violation of the Virginia Consumer Protection Act (VCPA), breach of contract, conversion, and violation of article 9 of the Uniform Commercial Code (UCC art. 9). Hall has moved the Court to decline to exercise supplemental jurisdiction over the state law claims "because Plaintiff's state law claims are not related to Plaintiff's federal allegations" and because Virginia "has substantial interest in that they go directly to enforcement of the State's consumer protection efforts." (Hall & HRFC's Mem. at 11). Under 28 U.S.C. § 1367(c), the Court may exercise its discretion in deciding whether to exercise supplemental jurisdiction when the claim raises a novel or complex state law issue; where the state law claim predominates over the federal claims; where the district court has dismissed all the federal claims; or in exceptional circumstances or for com-

---

**6.** It is alleged that none of the credit companies notified Plaintiff of the inquiry or the adverse action taken. Compl. ¶ 28.

pelling reasons for declining jurisdiction. With respect to Hall, all of the state law claims are directly related to the federal claims because all seven causes of action turn on the same set of operative facts involving the sale of one vehicle in a transaction between the same parties. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Even if the various motions to dismiss are granted, a substantial number of the federal causes of action pled will remain and this litigation will proceed in one form or another. Furthermore, even if all the federal claims are ultimately dismissed or otherwise "disappear," the Court, in its discretion, may still choose to exercise its jurisdiction in the interest of judicial economy and to avoid multiplicity of litigation. *Rosado v. Wyman,* 397 U.S. 397, 402–403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). At this point, it appears appropriate for this Court to retain supplemental jurisdiction in the interest of judicial economy where both the state and federal claims arise from the same set of operative facts. *Id.* Accordingly, it is recommended that Hall's motion to decline supplemental jurisdiction be denied.

## Conclusion

For the reasons stated, it is recommended that Hall's Motion to Dismiss be GRANTED as to the alleged violation of the FCRA under 15 U.S.C. § 1681b; that HRFC's motion to dismiss be GRANTED as to the alleged violation of the FCRA under 15 U.S.C. § 1681b; and that Mercury's Motion to Dismiss be DENIED in its entirety. It is further recommended that Plaintiff's uncontested motion made at commencement of oral argument on the motions pursuant to its prior letter notification to withdraw and/or dismiss the allegations of paragraph 49(d) as against Hall be GRANTED. It is otherwise recommended that all remaining grounds for requested dismissal, including Hall's mo-

tion to dismiss and motion to decline supplemental jurisdiction, should be DENIED.

Let the Clerk of the Court send a copy of this report and recommendation to the Hon. Robert E. Payne and to all counsel of record.

It is so ORDERED.